# FILED

MAR 1 0 2010

March 10, 2010

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE AMY ST. EVE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 10 CR  0195 |
| v. | ) |
| | ) Violations: Title 18, United States |
| BRIAN HOLLNAGEL and | ) Code, Sections 1343 and 2; Title 26, |
| BRIAN OLDS | ) United States Code, Sections 7201 |
| | ) and 7206(1) |
| | ) |
| | ) **UNDER SEAL** |

MAGISTRATE JUDGE COX

## COUNT ONE

The SPECIAL SEPTEMBER 2008 GRAND JURY charges:

1.      At times material to this indictment:

     a.      Defendant BRIAN HOLLNAGEL was the owner, president and chief executive officer of BCI.

     b.      BCI Aircraft Leasing, Inc. was a privately-owned Illinois corporation with its principal place of business originally in Naperville, Illinois and, later, in Chicago, Illinois.  BCI Aircraft Leasing, Inc. and its various related limited liability companies (collectively referred to as "BCI") were in the business of buying, selling and leasing commercial airplanes.  BCI raised funds for its operations through the sale to the public of limited partnership interests and other investments, as well as through loans from financial institutions.

c.      Defendant BRIAN OLDS was an officer and employee of AAR CORP. and its related companies (collectively referred to as "AAR"), a company headquartered in Wood Dale, Illinois, which was a provider of products and services to the aerospace and government defense industries.  AAR was publicly held and its stock was listed on the New York Stock Exchange.   One part of AAR's business involved the sale and leasing of commercial aircraft.  In or about 2004, defendant OLDS was promoted to Group Vice President of AAR's Aircraft Group.  In this position, defendant OLDS was involved in the purchase and sale of commercial airplanes by AAR.

d.      In or about May 1996, October 2003 and April 2004, defendant OLDS represented in writing to AAR that he had received, read and understood AAR's "Code of Business Ethics and Conduct," and was not engaged in, and did not expect to be engaged in, any conduct that violated the Code of Business Ethics and Conduct.  AAR's Code of Business Ethics and Conduct required OLDS to, among other things:

i.      avoid personal conflicts of interest with regard to AAR's interests;

ii.     refrain from accepting payments from any individual or company that conducted or sought to conduct business with AAR;

iii.    use corporate opportunities solely for the benefit of AAR;

iv.     refrain from taking for his own benefit opportunities that properly belonged to AAR;

-2-

        v.      refrain from competing with AAR or using corporate property for personal gain;

        vi.     maintain confidentiality of AAR's confidential or proprietary information; and

        vii.    protect AAR's assets.

### Scheme To Defraud

2.     Beginning no later than in or about 2004 and continuing through at least on or about March 11, 2005, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRIAN HOLLNAGEL and
BRIAN OLDS,

defendants herein, and others known and unknown to the grand jury, devised and intended to devise, and participated in, a scheme to defraud AAR and its shareholders of money and property by means of materially false and fraudulent pretenses, representations, and promises, and by material omissions, which scheme is further described in the following paragraphs.

3.     It was part of the scheme to defraud that in or about summer or early fall 2004, defendants HOLLNAGEL and OLDS agreed that, in exchange for a bribe payment of approximately $250,000, defendant OLDS would use his position as a Group Vice President of AAR to ensure AAR's purchase from BCI of two commercial airplanes then under lease to US Airways (the "US Airways planes").

-3-

4.      It was further part of the scheme to defraud that defendant OLDS negotiated AAR's purchase of the US Airways planes from BCI while concealing from AAR that he had agreed to receive financial benefits from defendant HOLLNAGEL and BCI in exchange for his efforts to influence AAR's actions regarding its purchase of the US Airways planes from BCI.

5.      It was further part of the scheme to defraud that, in connection with the negotiation for AAR's purchase of the US Airways planes from BCI, defendant OLDS: (a) provided defendant HOLLNAGEL and BCI with confidential business information regarding the price AAR was willing to pay for the US Airways planes and negotiated a purchase price knowing that he was not trying to obtain the lowest price he could for AAR; and (b) provided defendant HOLLNAGEL and BCI with AAR's confidential financial analysis of its proposed purchase of the US Airways planes from BCI.  As a result, defendant HOLLNAGEL, through BCI, was able to sell the US Airways planes to AAR for $15,400,000.

6.      It was further part of the scheme to defraud that defendant HOLLNAGEL caused BCI to purchase the first US Airways plane approximately four months before the purchase agreement with AAR was signed for approximately $5,475,000 and caused BCI to purchase the second US Airways plane after the purchase agreement with AAR was signed for approximately $6,200,000.  This meant a profit of almost $4,000,000 to BCI as a result of the undisclosed corrupt assistance of defendant OLDS.

7.     It was further part of the scheme to defraud that on or about December 6, 2004, after defendant OLDS had signed the purchase agreements on AAR's behalf to acquire the US Airways planes from BCI, but before the closings on the sales of those planes, defendant HOLLNAGEL, at defendant OLDS' request, caused BCI to pay defendant OLDS $35,000 as a partial payment of the money owed to defendant OLDS for his efforts in using his position at AAR to negotiate AAR's purchase of the planes from BCI.

8.     It was further part of the scheme to defraud that in or about late 2004, defendants HOLLNAGEL and OLDS agreed that, in exchange for a bribe payment of approximately $180,000, defendant OLDS would use his position as Group Vice President to ensure that AAR would sell to BCI three commercial airplanes that AAR had leased to Continental Airlines (the "Continental planes").

9.     It was further part of the scheme to defraud that defendant OLDS used his position as Group Vice President for AAR to negotiate the sale of the Continental planes to BCI for approximately $15,000,000 on or about February 28, 2005.

10.     It was further part of the scheme to defraud that defendant OLDS negotiated AAR's sale of the Continental planes to BCI while concealing from AAR that he had received and agreed to receive financial benefits from defendant HOLLNAGEL and BCI in exchange for his efforts to influence AAR's actions with respect to the sale of the Continental planes, and that he had received and agreed to receive payments from HOLLNAGEL and

BCI in exchange for influencing AAR's actions with respect to its purchase of the US Airways planes from BCI.

11.     It was further part of the scheme to defraud that in or about late December 2004 or early January 2005, defendant OLDS directed defendant HOLLNAGEL to make future payments to him related to the US Airways planes and the Continental planes to Mercury Air Corporation, a company set up and controlled by defendant OLDS that acted as a corporate shell and had no source of income other than payments defendant HOLLNAGEL caused BCI to make to Mercury Air Corporation.

12.     It was further part of the scheme to defraud that between approximately January 18, 2005, and March 11, 2005, defendant HOLLNAGEL caused BCI to pay to Mercury Air Corporation approximately $375,000, representing bribe payments to defendant OLDS for his assistance in arranging the US Airways planes and the Continental planes transactions for the financial benefit of HOLLNAGEL and BCI.

13.     It was further part of the scheme to defraud that defendants HOLLNAGEL and OLDS did misrepresent, conceal and hide, and cause to be misrepresented, concealed and hidden, acts done in furtherance of the scheme and the purpose of those acts.

14.     It was further part of the scheme to defraud that one of the means by which defendant OLDS concealed and attempted to conceal the scheme was by falsely representing to AAR in or about October 2003 and, again, in or about April 2004 that he was not engaged in and did not intend to be engaged in any conduct violating AAR's Code of Business Ethics

and Conduct. OLDS knew when he made these representations that they were false, because for several years, defendant HOLLNAGEL had made undisclosed bribe payments to defendant OLDS in his capacity as an officer and employee of AAR in exchange for, among other things, the preparation of recommendation letters falsely portraying BCI's business relationship with AAR, obtaining equity financing for BCI, and providing BCI with confidential business information of AAR, including confidential information regarding potential AAR business transactions.

15.   On or about March 11, 2005, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRIAN HOLLNAGEL and
BRIAN OLDS,

defendants herein, and others known and unknown to the grand jury, for the purpose of executing and attempting to execute the above-described scheme, knowingly did cause to be transmitted by means of wire communication in interstate commerce a writing, sign, and signal, in that defendant HOLLNAGEL caused a wire transfer of $250,000 from Fifth Third Bank to Bank One, now known as JP Morgan Chase, that was routed through a Federal Reserve facility outside of Illinois;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO

The SPECIAL SEPTEMBER 2008 GRAND JURY further charges:

1.      At times material to this indictment:

        a.      Defendant BRIAN OLDS was an officer and employee of AAR CORP. and its related companies (collectively referred to as "AAR"), a company headquartered in Wood Dale, Illinois which, was a provider of products and services to the aerospace and government defense industries.  AAR was publicly held and its stock was listed on the New York Stock Exchange.  One part of AAR's business involved the sale and leasing of commercial aircraft.  In or about 2004, defendant OLDS was promoted to Group Vice President of AAR's Aircraft Group.  In this position, defendant OLDS was involved in the purchase and sale of commercial airplanes by AAR.

        b.      BCI Aircraft Leasing, Inc. was a privately-owned Illinois corporation with its principal place of business originally in Naperville, Illinois and, later, in Chicago, Illinois.  BCI Aircraft Leasing, Inc. and its various related limited liability companies (collectively referred to as "BCI") were in the business of buying, selling and leasing commercial airplanes.

2.      Beginning in approximately early 2005 and continuing thereafter until approximately April 9, 2005, in the Northern District of Illinois, Eastern Division,

                                BRIAN OLDS,

defendant herein, did willfully and knowingly attempt to evade and defeat income tax due

and owing by him to the United States of America for calendar year 2004, by committing various affirmative acts of evasion which included the following:

      a.      In or about early 2005, defendant OLDS falsely represented to his tax preparer that he did not earn any commissions or consulting fees in 2004, whereas in fact, as OLDS knew, in or about December 2004, he received $35,000 from BCI in connection with work OLDS performed to ensure that BCI was able to sell two airplanes to the AAR Companies; and

      b.      On or about April 15, 2005, defendant OLDS caused to be filed with the Internal Revenue Service a United States Personal Income Tax Return (Form 1040 with schedules and attachments) for himself and his wife for the calendar year 2004, which did not report as income the $35,000 payment OLDS received from BCI in 2004;

In violation of Title 26, United States Code, Section 7201.

## COUNT THREE

The SPECIAL SEPTEMBER 2008 GRAND JURY further charges:

On or about September 18, 2006, in the Northern District of Illinois, Eastern Division,

### BRIAN OLDS,

defendant herein, a resident of the Northern District of Illinois, Eastern Division, willfully made and subscribed, and caused to be made and subscribed, a United States Corporation Income Tax Return (Form 1120S with schedules and attachments) for Mercury Air Corporation for the calendar year 2005, which return was verified by a written declaration that it was made under the penalties of perjury, and filed with the Internal Revenue Service, which return defendant OLDS did not believe to be true and correct as to every material matter, in that defendant OLDS represented and caused to be represented on: (a) Line 6 of said return that Mercury Air Corporation's Total Income was $106,000, well knowing that Mercury Air Corporation's Total Income was in excess of $106,000, defendant OLDS having failed to report the full amount of gross receipts Mercury Air Corporation received from BCI Aircraft Leasing, Inc. and its subsidiaries and affiliates in 2005; and (b) Line 20 of said return that Mercury Air Corporation's Total Deductions were $93,740, well knowing that Mercury Air Corporation did not have allowable deductions in that amount;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT FOUR

The SPECIAL SEPTEMBER 2008 GRAND JURY further charges:

1.      At times material to this indictment:

       a.      Defendant BRIAN OLDS was an officer and employee of AAR CORP. and its related companies (collectively referred to as "AAR"), a company headquartered in Wood Dale, Illinois, which was a provider of products and services to the aerospace and government defense industries.  AAR was publicly held and its stock was listed on the New York Stock Exchange.   One part of AAR's business involved the sale and leasing of commercial aircraft.  In or about 2004, defendant OLDS was promoted to Group Vice President of AAR's Aircraft Group.  In this position, defendant OLDS was involved in the purchase and sale of commercial airplanes by AAR.

       b.      BCI Aircraft Leasing, Inc. was a privately-owned Illinois corporation with its principal place of business originally in Naperville, Illinois and, later, in Chicago, Illinois.  BCI Aircraft Leasing, Inc. and its various related limited liability companies (collectively referred to as "BCI") were in the business of buying, selling and leasing commercial airplanes.

       c.      Mercury Air Corporation was a sub-chapter S-Corporation whose sole shareholder was defendant OLDS.

2.      Beginning in approximately late December 2004 or early January 2005, and continuing until at least October 16, 2005, in the Northern District of Illinois, Eastern Division,

BRIAN OLDS,

defendant herein, did willfully and knowingly attempt to evade and defeat income tax due and owing by him to the United States of America for calendar year 2005, by committing various affirmative acts of evasion which included the following:

a.      In or about late December 2004 or early January 2005, defendant OLDS directed Brian Hollnagel, BCI's president and chief executive officer, to make payments Hollnagel owed to OLDS to Mercury Air Corporation;

b.      Prior to September 18, 2006, defendant OLDS falsely represented to his tax preparer that Mercury Air Corporation's gross receipts in 2005 were $106,000, whereas in fact, as OLDS knew, Mercury Air Corporation's gross receipts in 2005 were approximately $375,000;

c.      Prior to September 18, 2006, defendant OLDS falsely represented to his tax preparer that Mercury Air Corporation had over $77,000 in expenses, knowing that Mercury Air Corporation did not have such expenses;

d.      Prior to September 18, 2006, defendant OLDS provided to his tax preparer false documentation purporting to corroborate the business expenses that Mercury Air Corporation purportedly incurred in 2005;

-12-

e.      On or about September 18, 2006, defendant OLDS caused to be filed with the Internal Revenue Service a United States Corporate Income Tax Return (Form 1120S with schedules and attachments) for Mercury Air Corporation for calendar year 2005, knowing that: (a) the income reflected on the tax return would flow through to OLDS United States Individual Income Tax Return for calendar year 2005; and (b) the tax return contained false information about Mercury Air Corporation's gross receipts and expenses;

f.      On or about October 16, 2006, defendant OLDS caused to be filed with the Internal Revenue Service a United States Personal Income Tax Return (Form 1040 with schedules and attachments) for himself and his wife for the calendar year 2005, which falsely reported Mercury Air Corporation's income for calendar year 2005;

In violation of Title 26, United States Code, Section 7201.

-13-

## FORFEITURE ALLEGATIONS

The SPECIAL SEPTEMBER 2008 GRAND JURY alleges:

1.     The allegations contained in Count One of this Indictment are realleged and incorporated herein by reference for the purpose of alleging that certain property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     As a result of their violations of Title 18, United States Code, Section 1343, as alleged in the foregoing Indictment,

BRIAN HOLLNAGEL and
BRIAN OLDS,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offense(s).

3.     The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include but are not limited to:

(a)     payments made and caused to be made by defendant HOLLNAGEL to defendant OLDS totaling at least $400,000; and

(b)    all proceeds from the sale by BCI of the US Airways Airplanes and the acquisition by BCI of the Continental Airplanes, which proceeds were obtained as a result of the payments made by HOLLNAGEL to defendant OLDS.

4.    If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendants

(a)    Cannot be located upon the exercise of due diligence;

(b)    Has been transferred or sold to, or deposited with, a third party;

(c)    Has been placed beyond the jurisdiction of the Court;

(d)    Has been substantially diminished in value; or

(e)    Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property, under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY